FILED & ENTERED

AUG 26 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gasparia  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>RAOUF ROSHDY KHALIL,<br><br>           Debtor.<br>STEVEN GOLDMAN,<br><br>    Plaintiff,<br><br>       vs.<br><br>RAOUF ROSHDY KHALIL,<br><br>    Defendant. | **Case No.: 1:11-bk-16918-MB**<br><br>**Chapter 7**<br><br>**Adv. Proc. No.   1:11-ap-01533-MB**<br><br><br>**MEMORANDUM OF DECISION AFTER REMAND AND ADDITIONAL TRIAL PROCEEDINGS** |

    This memorandum constitutes the Court's findings of fact and conclusions of law after remand and additional trial proceedings pursuant to Fed. R. Bankr. P. 7052.

1

# I. INTRODUCTION & PROCEDURAL HISTORY

On July 31, 2014, the Honorable Alan M. Ahart, United States Bankruptcy Judge for the Central District of California, conducted a trial in this adversary proceeding.  Michael J. Avenatti appeared on behalf of Plaintiff Steven Goldman ("Goldman" or the "Plaintiff").  The Defendant, and chapter 7 debtor herein, Raouf Roshdy Khalil ("Khalil" or the "Defendant") appeared on his own behalf.  The Plaintiff's *First Amended Complaint and Objection to Dischargeability of Debt* (the "Complaint"), the operative complaint herein, asserted ten claims for relief under Bankruptcy Code sections 523(a)(2)(A) and (a)(2)(B); 523(a)(4); 523(a)(6); 727(a)(2)(A) and (a)(2)(B); 727(a)(3); 727(a)(4)(A) and (a)(4)(B); and 727(a)(5).

At the conclusion of trial, the Court stated its findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and found in favor of the Defendant on all claims for relief.  On August 15, 2014, the Court entered an *Order Directing Judgment be Entered in Favor of the Defendant* (the "Judgment," Adv. Dkt. No. 190).  On August 18, 2014, the Plaintiff filed a *Notice of Appeal* (Adv. Dkt. 192) of the Judgment and elected to have the appeal heard by the United States District Court for the Central District of California (the "District Court," Adv. Dkt. 193).

On May 26, 2015, the District Court, the Honorable Margaret M. Morrow, United States District Judge presiding, entered an *Order Affirming in Part the Decision of the Bankruptcy Court and Vacating and Remanding in Part* (the "First Appellate Order") (Adv. Dkt.202).  On June 18, 2015, the Plaintiff filed a *Notice of Appeal* of the First Appellate Order to the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit," Adv. Dkt. 203).

On January 26, 2016, the Ninth Circuit entered an order dismissing the appeal for lack of jurisdiction, finding that the First Appellate Order was "not a final appealable decision because it remands the matter back to the bankruptcy court for further fact-finding on three of appellant's claims." (Adv. Dkt. 205).  On February 18, 2016, the Ninth Circuit issued its mandate pursuant to Fed. R. App. P. 41(a) (Adv. Dkt. 206).

On July 25, 2016, the Court, Judge Alan Ahart presiding, entered its *Supplemental Findings of Fact and Conclusions of Law After Remand* (the "Supplement After Remand," Adv. Dkt. 211) and an *Amended Judgment After Remand* (the "Amended Judgment," Adv. Dkt. 212).  The Court

2

1    found that the Plaintiff failed to satisfy his burden under Bankruptcy Code sections 523(a)(2)(A),

2    523(a)(6), and 727(a)(2)(A) by a preponderance of the evidence.  The Amended Judgment granted

3    judgment in favor of the Defendant.

4           On August 8, 2016, the Plaintiff filed a *Notice of Appeal* from the Amended Judgment.  On

5    April 24, 2017, the District Court, the Honorable Christina A. Snyder, United States District Judge

6    presiding, entered an *Order Affirming in Part, and Vacating and Remanding in Part, the*

7    *Bankruptcy Court's Amended Judgment After Remand* (the "Second Appellate Order").

8           Following remand to this Court pursuant to the Second Appellate Order, the undersigned set

9    this matter for a status conference on June 12, 2018.  At the status conference, attorney Carlos

10   Colorado of Eagan Avenatti, LLP appeared on behalf of the Plaintiff.  The Defendant, then pro se,

11   appeared telephonically from Dubai.  The Defendant thereafter retained attorney David Shemano,

12   of ShemanoLaw, as counsel.  On October 5, 2018, through their respective counsel, the parties filed

13   their *Joint Pre-Trial Stipulation* (Adv. Dkt. 235), which included a joint exhibit list.  An order

14   approving the joint pretrial stipulation was subsequently entered on March 7, 2019 (Adv. Dkt. 251).

15          The Court held a pretrial conference on January 10, 2019.  Attorney David Shemano

16   appeared for the Defendant.  There was no appearance by the Plaintiff.  At the pretrial conference,

17   the Court set a trial date of March 19, 2019 and deadlines for the submission of trial briefs.  On

18   January 14, 2019, the trial date was docketed and notice thereof was given by Notice of Electronic

19   Filing on Michael Avenatti of Eagan Avenatti, LLP. (Adv. Dkt. 248).

20          In accordance with the timetable established by the Court at the pretrial conference, both the

21   Plaintiff and Defendant, through counsel, timely filed trial briefs (all of which correctly listed the

22   trial date of March 19, 2019 at 10:00 a.m.).  The trial brief filed by the Plaintiff was filed on his

23   behalf by Michael Avenatti of Eagan Avennati, LLP (Adv. Dkt. 250).  The trial briefs filed by the

24   Defendant were filed on his behalf by David Shemano of ShemanoLaw (Adv. Dkt. 249, 253).  The

25   Plaintiff, through Michael Avenatti, lodged joint trial exhibit binders with chambers on March 18,

26   2019, one day prior to the trial.

27          The trial took place on March 19, 2019 at 10:00 a.m.  David Shemano of ShemanoLaw

28   appeared on behalf of the Defendant.  The Defendant also was present.  Neither the Plaintiff nor his

3

**MEMORANDUM OF DECISION AFTER REMAND AND ADDITIONAL TRIAL PROCEEDINGS**

1  counsel appeared.  At trial, Mr. Shemano called only one witness, the Defendant.  The Court had

2  the opportunity to observe the Defendant, evaluate his demeanor, consider his testimony, and

3  assess his credibility.

4  ## II.  SCOPE OF THE REMAND/ISSUES PRESENTED

5  The rule of mandate doctrine circumscribes what a trial court may do when a matter is

6  remanded for further proceedings by the appellate court.

7  When a case has been once decided by this court on appeal, and remanded to

8  the [district court], whatever was before this court, and disposed of by its decree, is

9  considered as finally settled. The [district court] is bound by the decree as the law of

10  the case, and must carry it into execution according to the mandate. That court

11  cannot vary it, or examine it for any other purpose than execution; or give any other

12  or further relief; or review it, even for apparent error, upon any matter decided on

13  appeal; or intermeddle with it, further than to settle so much as has been

14  remanded.... But the [district court] may consider and decide any matters left open

15  by the mandate of this court....

16  *U.S. v. Thrasher,* 483 F.3d 977, 981 (9th Cir. 2007) (*quoting In re Sanford Fork & Tool Co.*, 160

17  U.S. 247 255-56, (1895)).  "In this circuit, if a district court errs by violating the rule of mandate,

18  the error is a jurisdictional one."  *Id.*

19  The Second Appellate Order affirmed in part, and vacated and remanded in part, the

20  Amended Judgment.  Specifically, the order affirmed the Court's denial of the Plaintiff's claim

21  under Bankruptcy Code section 727(a)(2)(A) but vacated and remanded the Court's denial of the

22  Plaintiff's claims under Bankruptcy Code section 523(a)(2)(A) and 523(a)(6).

23  The order states that "the bankruptcy court's analysis rests on a mistaken factual premise.  It

24  is not correct that Khalil was never under an obligation to make any payments as contemplated by

25  the settlement until… more than three years after the settlement agreement [hereinafter "Settlement

26  Agreement"] was signed."  As the order explains, "the facts could support a finding that Khalil

27  entered the Settlement Agreement without a present intent to perform or with actual or constructive

28  knowledge of his prospective inability to perform."  On the other hand, the court also could find

4

**MEMORANDUM OF DECISION AFTER REMAND AND ADDITIONAL TRIAL PROCEEDINGS**

1  "that Khalil intended to perform his obligations under the settlement agreement that is the subject

2  of this litigation.  The problem is that the bankruptcy court never made a finding on the record

3  accepting or rejecting Khalil's testimony."  (Second Appellate Order at 5-6).

4      Accordingly, on remand, the Second Appellate Order instructs the Court to determine:

5          "whether Khalil's failure to sell his house or begin making required monthly

6          payments is evidence that he entered the Settlement Agreement without a present

7          intent to perform or with actual or constructive knowledge of his prospective

8          inability to perform."

9  Second Appellate Order at 6.  The Court has examined this issue with the benefit of the Defendant's

10  live testimony at the post-remand trial and sets forth its findings and conclusions below.

11

12  ### III. PROMISSORY FRAUD UNDER BANKRUPTCY CODE SECTIONS 523(a)(2)(A) AND 523(a)(6)

13      As he asserted in the previous appeal, the Plaintiff contends that at the time

14  the Defendant signed the Settlement Agreement, on May 5, 2008, the Defendant had no intention

15  of complying with his obligations therein, and therefore, the Plaintiff's claim should be determined

16  nondischargeable.

17      To prevail on a claim under Bankruptcy Code section 523(a)(2)(A), the Plaintiff must show

18  by a preponderance of the evidence that: (1) the debtor made a representation; (2) the debtor knew

19  at the time the representation was false; (3) the debtor made the representation with the intention

20  and purpose of deceiving the creditor; (4) the creditor relied on the representation; and (5) the

21  creditor sustained damage as the proximate result of the representation.  *Apte v. Japra (In re Apte)*,

22  96 F.3d 1319, 1322 (9th Cir.1996).

23      In support of his claim, the Plaintiff, in his trial brief, points to the fact that the Defendant

24  never made a single payment to the Plaintiff despite representations from Defendant that he

25  (1) earned in excess of $300,000 in 2009 and 2010; (2) has jewelry and assets in excess of

26  $300,000; and (3) had an obligation to sell his house not later than February 28, 2009.  Instead, the

27  Plaintiff asserts that the Defendant continued to live in and enjoy the benefit of his house, while

28

1    refusing to pay the Plaintiff as he had promised.  The Plaintiff contends that he justifiably relied on

2    such representations and, for that reason, paid off the Defendant's portion of the line of credit.

3         At the post-remand trial, when the Defendant was asked how he intended to repay the

4    Plaintiff on the loan, the Defendant responded that he intended to sell his house to pay off his

5    obligation to the Plaintiff because the Defendant believed there was more than enough equity in the

6    house to do so.  (March 19, 2019 Trial Transcript, 22:9-11; 22:23-25; 23:1-2).  The Defendant

7    further testified that he and his wife undertook substantial efforts to sell the house.  They hired a

8    very reputable broker, advertised and marketed the home, and even lowered the sale price of the

9    home to entice buyers.  (March 19, 2019 Trial Transcript, 26:18-21).  Yet, despite all of these

10   efforts, the home did not sell, likely due to the global financial crisis that had a severe impact on

11   the Southern California real estate market.  (March 19, 2019 Trial Transcript, 28:5-13).

12        When asked by the Court if he believed he had enough equity in the home to pay off the

13   Plaintiff, the Defendant responded with an unequivocal "yes."  The Defendant explained that he

14   and his wife were prepared to walk away from the home.  (March 19, 2019 Trial Transcript, 35:23-

15   25; 36:18-20).

16        In the Second Appellate Order, the District Court notes that the Defendant previously

17   testified that he attempted to sell his house and even "lowered the price to $4.3 million after the

18   onset of the 2008 financial crisis; that he made brochures and advertised the property on the

19   internet; and that he nonetheless received no offer."  (Second Appellate Order at 6).  But the

20   District Court observed that the Court did not make an express finding regarding the Plaintiff's

21   credibility.  The District Court determined that this Court must make such a determination and

22   remanded the matter for that purpose.

23        The Court finds that the Defendant's testimony at the post-remand trial was clear,

24   persuasive, and sincere.  His testimony demonstrates that he had every intention to perform under

25   the Settlement Agreement.   The Court finds that the Defendant's testimony was credible.  While

26   the Plaintiff failed to appear for the trial, the Court asked the Defendant numerous questions of its

27   own, focusing on Defendant's intent.  Based on the Defendant's testimony, the Court finds that the

28   Plaintiff has failed to establish that at the time of the signing of the Settlement Agreement, the

6

**MEMORANDUM OF DECISION AFTER REMAND AND ADDITIONAL TRIAL PROCEEDINGS**

1  Defendant did not intend to comply with his obligations nor has the Plaintiff established that he

2  reasonably relied upon any such lack of intent to perform.  Accordingly, the Court finds in favor of

3  the Defendant under section 523(a)(2)(A).

4       The other claim asserted by the Plaintiff arises under Bankruptcy Code section 523(a)(6).

5  This statute excepts from discharge a debt arising from a willful and malicious injury by the debtor

6  to another entity or to the property of another entity.  *See* 11 U.S.C. § 523(a)(6).  To show a willful

7  injury under section 523(a)(6), the Plaintiff must show that the Defendant deliberately or

8  intentionally injured the Plaintiff or his property, and that in doing so, the Defendant intended the

9  consequences of his act, not just the act itself.  *Kawaauhau v. Geiger*, 523 U.S. 57, 60–61 (1998).

10  In other words, Defendant must act with a subjective motive to inflict injury, or with actual

11  knowledge that injury is substantially certain to result from the conduct.  *In re Su*, 290 F.3d 1140,

12  1143 (9th Cir. 2002); *Petralia v. Jercich*, 238 F.3d 1202, 1208 (9th Cir. 2001).  Injuries resulting

13  from reckless or negligent acts do not satisfy the wrongful intent required by section 523(a)(6). *In*

14  *re Peklar*, 260 F.3d 1035, 1038 (9th Cir. 2001).

15       An injury is malicious within the meaning of section 523(a)(6) if the debtor: (1) commits a

16  wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) the act is done

17  without just cause or excuse. *In re Su*, 290 F.3d at 1147.

18       The Second Appellate Order concludes that the Court's denial of the Plaintiff's section

19  523(a)(6) claim was erroneous because it was based on the same erroneous factual findings on

20  which the Court denied the section 523(a)(2)(A).  Based on the Plaintiff's live testimony at the

21  post-remand trial, the Court finds that the Defendant clearly intended to perform under the

22  Settlement Agreement at the time the parties agreed to it.  As such, irrespective of whether the

23  Defendant committed a wrongful act that caused injury to the Plaintiff, and irrespective of whether

24  there was just cause or an excuse for such act, the Court finds that the Defendant did not have the

25  intent to injure the Plaintiff that is required to sustain a claim under section 523(a)(6).

26  Accordingly, the Court finds in favor of the Defendant on this claim also.

27

28

**MEMORANDUM OF DECISION AFTER REMAND AND ADDITIONAL TRIAL PROCEEDINGS**

## IV. REQUEST FOR ADDITIONAL FINDINGS

In connection with the post-remand trial, the Defendant asks this Court to make additional findings on an issue other than the Defendant's intent to perform under the Settlement Agreement. Specifically, the Defendant argues that separate and apart from the Defendant's intent, the requirements for sustaining a claim under section 523(a)(2)(A) cannot be met because the Settlement Agreement was a forbearance agreement.  The Defendant contends that there can be no cognizable injury because the Settlement Agreement did not involve the extension of any new credit based on the Defendant's alleged misrepresentations, but rather forbearance with respect to collection of an existing debt. *See In re Siriani,* 967 F.2d 302, 305 (9th Cir. 1992) (where creditor entered into forbearance agreement based on debtor's alleged misrepresentation, creditor must show that "it had valuable collection remedies at the time … and that those remedies later became worthless").

Although this new argument may have merit—and the Court appreciates the effort by counsel to bolster the Defendant's position in the event this decision is appealed and subsequently vacated on the issue of the Defendant's intent—the Court ultimately concludes that under the narrow scope of the remand set forth in the Second Appellate Order, the Court is without jurisdiction to make such findings.

///

///

///

///

///

///

///

///

///

///

///

**MEMORANDUM OF DECISION AFTER REMAND AND ADDITIONAL TRIAL PROCEEDINGS**

## V. CONCLUSION

For all of the foregoing reasons, the Plaintiff has failed to establish his claims under sections 523(a)(2)(A) and 523(a)(6) by a preponderance of the evidence.  The Court will enter a separate amended judgment in favor of the Defendant on these claims.

# # #

Date: August 26, 2019

_____
Martin R Barash
United States Bankruptcy Judge

**MEMORANDUM OF DECISION AFTER REMAND AND ADDITIONAL TRIAL PROCEEDINGS**